IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PROENERGY SERVICES, LLC | § | |
| | § | |
| *Plaintiff* | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:16-cv-01920 |
| | § | |
| HESS CORPORATION AND | § | |
| HESS NORTH DAKOTA PIPELINES, LLC | § | |
| | § | |
| | § | |
| *Defendants.* | § | |

**DEFENDANTS HESS CORPORATION AND
HESS NORTH DAKOTA PIPELINES LLC'S ANSWER TO COMPLAINT
AND ORIGINAL COUNTERCLAIM**

Hess Corporation and Hess North Dakota Pipelines LLC, (collectively Hess) file this Answer to Complaint and Original Counterclaim and state as follows:

**ANSWER TO COMPLAINT**

1. Each and every allegation contained in the Plaintiff's Complaint is denied except as specifically admitted, qualified, or explained. Defendant hereby responds to the specific allegations contained in the complaint by responding to each numbered paragraph thereof as follows:

2. Paragraph 1 contains only prefatory statements not requiring a response.

3. Hess lacks knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 2.

4. With respect to Paragraph 3, Hess Corporation denies that its principal place of business is in Houston, Texas and Hess Corporation states that its activities in McKenzie County are conducted primarily through subsidiaries or affiliates, but otherwise admits the allegations.

-1-

5. With respect to Paragraph 4, Hess North Dakota Pipelines LLC admits the allegations.

6. Paragraph 5 makes a legal conclusion to which no response is necessary; however, this matter has been removed from North Dakota District Court to the United States District Court for the District of North Dakota, Northwest District, and subsequently transferred to the United States District Court for the Southern District of Texas pursuant to 28 U.S.C. §§ 1332, 1404, and 1441. Hess affirmatively alleges that Plaintiff has waived its right to a lien, and has further contractually obligated itself to the Courts of the United States or the Courts of the State of Texas, in and for Harris County, Texas, as demonstrated by Plaintiff's pleadings and the attachments thereto.

7. As to Paragraph 6, Hess admits that the real property affected by this dispute is located in McKenzie County, North Dakota, but denies that venue is proper and affirmatively alleges that Plaintiff has waived its right to a lien, and has further contractually obligated itself to litigate in the Courts of the United States or the Courts of the State of Texas, in and for Harris County, Texas.

8. Hess admits the allegations made in Paragraph 7

9. Hess admits the allegations made in Paragraph 8.

10. As to Paragraph 9, Hess admits that Plaintiff furnished services and materials pursuant to the Master Agreement and the Commercial Order, and admits that work was located in the SW¼ of Section 26, Township 153 North, Range 95 West, McKenzie County, North Dakota. Hess denies that the area where Plaintiff performed work is commonly referred to as the Hawkeye Compressor Station.

11. As to Paragraph 10, Hess admits that the referenced invoices were submitted to Hess. Hess denies the balance of Paragraph 10.

12. As to Paragraph 11, Hess admits that Plaintiff filed a Statement of Oil & Gas Well Construction Lien in McKenzie County, recorded as Document No. 485379. To the extent Document No. 485379 is referenced in such paragraph, Hess answers that such document speaks for itself. Hess denies that Plaintiff's lien is valid. Hess denies the balance of the allegations contained in Paragraph 11.

13. Hess denies the allegations contained in Paragraph 12. Hess specifically denies that the Oil & Gas Well Construction Lien has not been satisfied and remains attached to the Leasehold; Hess affirmatively alleges that such Oil & Gas Well Construction Lien is without merit and is invalid.

14. As to Paragraph 13, Hess admits that the referenced invoices were sent to it. Hess denies the balance of Paragraph 13.

15. Hess denies the allegations contained in Paragraph 14.

16. Hess denies the allegations contained in Paragraph 15.

17. Paragraph 16 makes legal conclusions to which no response is necessary. To the extent that factual allegations are set forth in Paragraph 16, Hess specifically denies the same.

18. Paragraph 17 makes legal conclusions to which no response is necessary. However, this matter has been removed from North Dakota District Court to the United States District Court for the District of North Dakota, Northwest District, and subsequently transferred to the United States District Court for the Southern District of Texas pursuant to 28 U.S.C. §§ 1332, 1404, and 1441. Hess further states that Plaintiff and Hess Corporation have contractually

agreed that all matters be litigated in Harris County, Texas in the Courts of the United States or the Courts of the State of Texas.

19. Hess denies the allegations contained in Paragraph 18.

20. Paragraph 19 is a reassertion of Paragraphs 1 through 18. Hess reasserts its answer to Paragraphs 1 through 18.

21. Hess denies the allegations contained in Paragraph 20.

22. As to Paragraph 21, Hess admits that no bond has been posted, but denies the balance of Paragraph 21.

23. Hess denies the allegations contained in Paragraph 22.

24. Hess denies the allegations contained in Paragraph 23.

25. Hess denies the allegations contained in Paragraph 24.

26. Paragraph 25 is a reassertion of Paragraphs 1 through 24. Hess reasserts its answer to Paragraphs 1 through 24.

27. Hess denies the allegations contained in Paragraph 26.

28. Hess denies the allegations contained in Paragraph 27.

29. Paragraph 28 is a reassertion of Paragraphs 1 through 27. Hess reasserts its answer to Paragraphs 1 through 27.

30. As to Paragraph 29, Hess admits that it accepted certain labor, goods, and services furnished by Plaintiff pursuant to the Master Agreement and Commercial Order, but denies that it has failed to pay any amounts contractually due.

31. As to Paragraph 30, Hess denies that Hess's adherence to the parties' contract amounts to a request that Plaintiff act as a "volunteer."

32. Hess denies the allegations contained in Paragraph 31.

33. Hess denies the allegations contained in Paragraph 32.

34. Hess denies the allegations contained in Paragraph 33.

35. Hess denies the allegations contained in Paragraph 34.

36. Hess denies the allegations contained in Paragraph 35.

37. As to Paragraphs 31 through 35, Hess specifically denies the allegations contained therein, and affirmatively alleges that Plaintiff's claim for "Unjust Enrichment" fails to state a claim for which relief can be granted. The parties' relationship is governed by a contract.

## AFFIRMATIVE AND OTHER DEFENSES

38. Hess affirmatively alleges that the Plaintiff's Complaint fails to state a claim upon which relief can be granted.

39. Hess affirmatively alleges that Plaintiff has failed to mitigate damages.

40. Hess affirmatively alleges that Plaintiff has contractually waived its right to lien Defendant's property.

41. Hess affirmatively alleges that Plaintiff is bound by accord and satisfaction.

42. Hess affirmatively alleges that Plaintiff has been paid in full for all services, labor and materials rendered.

43. Hess affirmatively alleges that Plaintiff's claims are barred because the amount it seeks to recover on the invoices are not reasonable and the result of undue delay.

44. Hess affirmatively alleges that any losses sustained by Plaintiff are the result of the actions or inactions of Plaintiff and/or other third parties.

45. Hess asserts that Plaintiff's claims for quantum meruit and unjust enrichment are barred by the existence of an express contract governing the work performed.

46. Hess reserves pending the completion of discovery all defenses and affirmative defenses available under law.

## ORIGINAL COUNTERCLAIM

## PARTIES, JURISDICTION, AND VENUE

47. Counter-plaintiff Hess Corporation is a Delaware corporation with its principal place of business in New York, New York.

48. Counter-plaintiff Hess North Dakota Pipelines, LLC is a Delaware limited liability company. The members of Hess North Dakota Pipelines, LLC are citizens of Delaware, New York, Connecticut, and/or Kentucky. No member of Hess North Dakota Pipelines, LLC is a citizen of Missouri.

49. Counter-defendant ProEnergy Services, LLC (ProEnergy) is a Missouri limited liability company. On information and belief, all members of ProEnergy are citizens of Missouri. On information and belief, no member of ProEnergy is a citizen of any state of which the Hess entities are citizens.

50. The Court has jurisdiction of this matter as it has jurisdiction over the initial claim. Further, the Court has subject matter jurisdiction pursuant to 28 U.S.C. 1332 as the amount in controversy exceeds $75,000, and there is complete diversity among the parties.

51. Venue is proper pursuant to 29 U.S.C. 1391 and the parties' Master Agreement for Goods and Services which provides for exclusive venue in the state and federal courts of Harris County, Texas.

## SUMMARY OF HESS'S CLAIMS

52. Hess hired ProEnergy to build a temporary compressor station in McKenzie County, North Dakota. Despite representations to the contrary, ProEnergy was ill equipped to

perform the work for which Hess had hired it. Although ProEnergy was well aware that time was of the essence, and that Hess would be harmed by each day that the project remained unfinished, ProEnergy failed to perform the work on time. This delay forced Hess to have to flare marketable natural gas that would have ordinarily been pushed to the compressor station and forced Hess to incur other consequences of having excess natural gas. Further, the delay caused Hess's time and materials cost to increase exponentially, as the longer it took to perform the work, the more ProEnergy's fees increased.

53. After the multitude of problems with ProEnergy, Hess initiated an audit of ProEnergy's work. The audit revealed multiple billing irregularities and overcharges.

54. Through this lawsuit, Hess seeks to recover its damages arising out of ProEnergy's delays and overcharges.

## FACTUAL BACKGROUND

55. Hess is one of the oldest oil and gas operators in the State of North Dakota. Indeed, Hess first proved there was oil in North Dakota in 1951 and has been operating there ever since. In the early 2010s, oil and gas production in the western part of North Dakota boomed because of the use of new technology, and Hess, along with many other companies, ramped up production in North Dakota.

56. As part of its extensive operations in North Dakota, Hess began building multiple major infrastructure projects, including a network of compressor stations throughout the State. Compressor stations facilitate the transport of natural gas through pipelines. Without the network of compressor stations, Hess would be unable to push natural gas through its pipelines, and would be forced to flare natural gas at the well head or would be forced to incur other consequences of having excess natural gas.

57. In 2014 Hess began building a permanent compressor station in Hawkeye, North Dakota. While the permanent compressor station was being built, however, gas production continued to increase and Hess lacked the infrastructure to deal with this gas. Rather than flare the gas or shut in wells, Hess decided to build a temporary compressor station while the permanent station was being constructed.

A. *ProEnergy delays the project and fails to keep the project in budget:*

58. Hess hired ProEnergy to build the temporary compressor station. ProEnergy represented to Hess that it had the capabilities to engineer, fabricate, and construct the temporary compressor station. ProEnergy understood that the temporary compressor station was being built to handle natural gas coming out of wells in North Dakota, and that absent the compressor capacity, Hess would either need to flare natural gas coming out of its wells or incur other consequences of having excess natural gas until it had the capacity to deal with the natural gas.

59. Hess Corporation entered into the Master Agreement for Goods and Services (Master Agreement) with ProEnergy effective as of November 1, 2013. Hess Corporation entered into Commercial Order No. CW2221412 (Commercial Order) with ProEnergy on or about May 16, 2014.

60. Pursuant to the Master Agreement ProEnergy agreed to perform all services with due diligence and without undue delays or interruption. Master Agreement § 2.3.

61. Additionally, ProEnergy agreed that time was of the essence in the contract, and that "[i]n the event of any [] delay, [Hess] reserves the right to terminate the Agreement and recover from [ProEnergy] all losses and costs incurred by Company from such delay." Master Agreement § 18.16.

62. ProEnergy consistently promised Hess that it would complete the project by November 9, 2014. It was not until October 24, 2014, barely two weeks before it was supposed to complete the work that ProEnergy first informed Hess that it might miss that target date. On October 24, 2014, ProEnergy informed Hess that it would not be able to complete the work until November 21, 2014. In the end, ProEnergy did not complete its work until December 2014.

63. Despite assurances to the contrary, ProEnergy was not capable of handling the scope of work provided to them. ProEnergy's chosen engineering subcontractor continually caused delays. In total, ProEnergy delayed the project by approximately one month. As a result of the delay, Hess incurred increased project costs. Additionally, Hess was not able to operate the temporary compressor station, forcing it to flare marketable natural gas at wells and incur other consequences of having excess natural gas.

64. As part of its contract with ProEnergy, Hess paid for an individual whose sole job was to monitor costs and ensure that project costs remained as budgeted. ProEnergy, however, failed to adequately control the project costs, and actual costs far exceeded its budget.

65. Despite the issues with ProEnergy, Hess has paid ProEnergy the vast majority of the amount that ProEnergy invoiced.

B. *Hess audit reveals over $3 million in overcharges:*

66. Pursuant to Section 4.8 of the Master Agreement, Hess initiated an audit of ProEnergy.

67. Hess's audit revealed numerous problems with ProEnergy's billing practices, including over charges and insufficient documentation. The audit found $3,041,894 in overcharges or charges that lacked adequate foundation.

68. Hess shared the results of its audit with ProEnergy and informed ProEnergy that it would be withholding payment on remaining invoices due to the audit findings. Section 4.8 of the Master Agreement provides that Hess may "withhold an amount necessary to offset any audit claims from current invoices of [ProEnergy]."

69. Pursuant to Section 4.8, Hess informed ProEnergy that it would be withholding further payment pending resolution of the audit issues. To date, ProEnergy has not satisfied the audit, and the audit remains open. Accordingly, Hess continues to withhold payment of ProEnergy's remaining invoices.

70. The audit revealed seven overarching issues with ProEnergy's billing practices. As described below, Hess seeks recovery for several of these claims through this Counterclaim. Additionally, Hess seeks compensation for ProEnergy's delay of the project, overcharges, and its breach of the forum selection clause.

## CAUSES OF ACTION

### 1. BREACH OF CONTRACT [Delay]

71. Hess Corporation incorporates by reference the preceding paragraphs of this Counterclaim as if fully restated herein below.

72. Pursuant to the Master Agreement, ProEnergy agreed to perform all services in a good and workmanlike manner and agreed to perform all services with due diligence and without undue delays or interruption. Master Agreement § 2.3. ProEnergy also agreed that time was of the essence in performing the work and that "[i]n the event of any [] delay, [Hess] reserves the right to terminate the Agreement and recover from [ProEnergy] all losses and costs incurred by Company from such delay." Master Agreement § 18.16.

73. ProEnergy failed to timely perform its services.

74. Hess Corporation was damaged by ProEnergy's failure to timely perform its services because it was forced to flare marketable natural gas and incurred other consequences of being unable to handle the amount of natural gas coming from those wells.

## 2. BREACH OF CONTRACT [Overcharge]

75. Hess Corporation incorporates by reference the preceding paragraphs of this Counterclaim as if fully restated herein below.

76. Pursuant to the Master Agreement, ProEnergy agreed to perform all services in a good and workmanlike manner and agreed to perform all services with due diligence and without undue delays or interruption. Master Agreement § 2.3. ProEnergy also agreed that time was of the essence in performing the work and that "[i]n the event of any [] delay, [Hess] reserves the right to terminate the Agreement and recover from [ProEnergy] all losses and costs incurred by Company from such delay." Master Agreement § 18.16.

77. ProEnergy failed to perform its work within a reasonably timely manner.

78. Hess Corporation was damaged by ProEnergy's failure to timely perform its services because ProEnergy's delays caused Hess's time and materials and other costs to increase unreasonably, resulted in an unreasonable time spent on the project along with unreasonable charges, and as a result Hess incurred increased costs.

## 3. BREACH OF CONTRACT [Audit Finding #2]

79. Hess Corporation incorporates by reference the preceding paragraphs of this Counterclaim as if fully restated herein below.

80. Paragraph 4.1 of the Master Agreement provides that "[e]xcept as otherwise agreed to in writing by Contractor and Company representative, the rates for the Services shall not be adjusted for any reason, including any increase in Contractor's costs."

81. ProEnergy agreed in Commercial Order No. CS2221412 not to charge any price or rate except as provided for in said Commercial Order.

82. ProEnergy has charged Hess Corporation and/or Hess North Dakota Pipelines LLC for items not allowed under the Commercial Order or overcharged for those items

83. ProEnergy has charged Hess Corporation, and Hess Corporation has paid to ProEnergy, $32,504.00 in excess of what is permitted by the Commercial Order.

84. Pursuant to Paragraph 4.8 of the Master Agreement, Hess Corporation has the right to recover such amount from ProEnergy and may immediately withhold an amount necessary to offset any audit claims from current invoices of ProEnergy.

85. As a result of ProEnergy's breach of contract in overcharging, Hess Corporation has suffered damages in an amount not less than $32,504.00 and in such further amounts as may be proven at trial.

## 4. BREACH OF CONTRACT [Audit Finding #3]

86. Hess Corporation incorporates by reference the preceding paragraphs of this Counterclaim as if fully restated herein below.

87. The Master Agreement required ProEnergy to provide supporting documentation for all invoices submitted to Hess. Hess' payment of invoices is contingent upon the invoice conforming to the requirements of Article 4 of the Master Agreement. ProEnergy agreed that Hess shall not be liable for, nor shall pay, any prices or rates charged by ProEnergy that are not provided for in Schedule 2 of the Commercial Order.

88. ProEnergy has submitted invoices to Hess Corporation in the amount of $1,471,379 in which the supporting documentation contains discrepancies or lacks proper backup foundation.

89. Of this amount, ProEnergy submitted invoices seeking $272,877.63 above contracted rates for services provided by third party vendors or for positions which had not been provided for in Schedule 2.

90. As a result of ProEnergy's breach of contract in overcharging, Hess Corporation has suffered damages in an amount not less than $1,471,379.00 and in such further amounts as may be proven at trial.

### 5. BREACH OF CONTRACT [Audit Finding #4]

91. Hess Corporation incorporates by reference the preceding paragraphs of this Counterclaim as if fully restated herein below.

92. The Master Agreement required ProEnergy to provide supporting documentation for all invoices submitted to Hess. Hess' payment of invoices is contingent upon the invoice conforming to the requirements of Article 4 of the Master Agreement.

93. An audit of ProEnergy's records and accounts was conducted in July 2015. That audit revealed that ProEnergy's invoices totaling $955,476.00 failed to provide complete documentation as required under Article 4 of the Master Agreement and Paragraph 1.4 of Attachment 1 to Schedule 2 of the Commercial Order.

94. Paragraph 4.8 of the Master Agreement provides "[i]f, as a result of such audit, Company determines that any amount previously paid to Contractor was not due and payable, Company shall have the right to recover such amount from Contractor, notwithstanding any prior full or partial payment by Company to Contractor of such invoiced amounts." As such, Hess is entitled to recovery of $955,476.00.

### 6. BREACH OF CONTRACT [Audit Finding #6]

95. Hess Corporation incorporates by reference the preceding paragraphs of this Counterclaim as if fully restated herein below.

96. ProEnergy ordered and purchased materials exceeding the quantities required in the Bill of Materials.

97. As a direct and proximate result of ProEnergy's excessive purchases, Hess has suffered damages in the amount of $409,590.00.

### 7. BREACH OF CONTRACT [Audit Finding #7]

98. Hess Corporation incorporates by reference the preceding paragraphs of this Counterclaim as if fully restated herein below.

99. An audit of ProEnergy's records and accounts was conducted in July 2015. That audit revealed that Northern Electric, ProEnergy's subcontractor, purchased materials in excess of what was required for completion of the project.

100. As a direct and proximate result of ProEnergy's excessive purchases, Hess has suffered damages in the amount of $90,000.00.

### 8. BREACH OF CONTRACT [Breach of Forum Selection Clause]

101. Hess Corporation incorporates by reference the preceding paragraphs of this Counterclaim as if fully restated herein below.

102. Pursuant to Section 17.2 of the Master Agreement, ProEnergy agreed that the exclusive venue with respect to any dispute related to the Master Agreement was the Courts of the United States or the State of Texas in Harris County, Texas. Despite this exclusive venue clause, ProEnergy initially filed this lawsuit in the District Court for McKenzie County, North Dakota. Hess Corporation was required to engage Crowley Fleck, LLP as counsel in North

Dakota, and remove the case to the United States District Court for the District of North Dakota and subsequently file a Motion to Dismiss, or in the Alternative Motion to Transfer Pursuant to 28 U.S.C.A. § 1404(a). The United States District Court for the District of North Dakota granted Hess's Motion to Transfer and transferred the case to this Court.

103. As a result of ProEnergy's breach of Section 17.2 of the Master Agreement, Hess was damaged in that it was forced to incur attorneys' fees.

### 9. DECLARATORY JUDGMENT

104. Hess incorporates by reference the preceding paragraphs of this Counterclaim as if fully restated herein below.

105. Hess North Dakota Pipelines LLC is the owner of various easements and rights of way to lay, construct, maintain, alter, repair, remove and replace one or more pipelines over and across the SW¼ of Section 26, Township 153 North, Range 95 West, McKenzie County, North Dakota.

106. ProEnergy filed a Statement of Oil & Gas Well Construction Lien dated September 11, 2015, recorded September 29, 2015, as Document No. 485379 in the McKenzie County Recorder's Office encumbering Hess North Dakota Pipelines LLC's said SW¼ of Section 26.

107. Pursuant to Section 10.1 of the Master Agreement, ProEnergy agreed that it would not file a lien against Hess's property unless Hess failed to pay undisputed monies owed to ProEnergy and ProEnergy provided Hess with (30) days' prior Notice of its intent to file a lien.

108. ProEnergy is owed no money by Hess, and its Statements of Oil & Gas Well Construction Lien are wholly invalid and without merit.

109. In the alternative, ProEnergy expressly waived its right to file a lien on Hess's property.

110. Accordingly, ProEnergy's Statement of Oil & Gas Well Construction Liens are wholly invalid and without merit.

111. Hess North Dakota Pipelines LLC requests that this Court pursuant to N.D.C.C. § 32-17, Federal Rule of Civil Procedure 57, and 28 U.S.C. § 2201 enter a declaratory judgment quieting title to and confirm the ownership of Hess North Dakota Pipelines LLC easements in the SW¼ of Section 26, Township 153 North, Range 95 West, McKenzie County, North Dakota and award Hess its attorney's fees and costs pursuant to N.D.C.C. § 35-24-19.

### 10. BREACH OF CONTRACT [Audit Costs]

112. Hess Corporation incorporates by reference the preceding paragraphs of this Counterclaim as if fully restated herein below.

113. Pursuant to Paragraph 4.8 of the Master Agreement, Hess had the right to audit the ProEnergy's records for compliance with the terms and conditions of the Master agreement and any Commercial Orders and Purchase Agreements.

114. Hess conducted such an audit which revealed cumulative overbilling of $3,041,894.00, in excess of five percent of the total billings by ProEnergy. Hess has waived certain of the audit findings but those pursued in this action likewise exceed five percent of total billings.

115. Paragraph 4.8 of the Master Agreement requires ProEnergy to reimburse Hess for its reasonable audit costs if such audit reveals an overbilling of five percent or more.

116. Hess' reasonable audit costs were to be reimbursed by ProEnergy.

WHEREFORE, Hess requests that this Court enter judgment that:

A. The Complaint be dismissed with prejudice and judgment entered in favor of Hess Corporation and Hess North Dakota Pipelines LLC,;

B. Awarding to Hess Corporation and Hess North Dakota Pipelines LLC the costs and disbursements of this action;

C. Awarding to Hess Corporation and Hess North Dakota Pipelines LLC the full amount of its reasonable attorney's fees incurred pursuant to applicable law, Texas Civil Practice and Remedies Code § 38.001, and the Master Agreement.

D. Awarding Hess Corporation and Hess North Dakota Pipelines LLC the relief requested in their Counterclaims, including damages for ProEnergy's breach of contract and the declaratory relief described above;

E. Pre-judgment and post-judgment interest as allowed by law; and

F. Granting such other relief as this Court deems just and proper.

Respectfully submitted,

*/s/ Michael J. Mazzone*
Michael J. Mazzone
Attorney-in-Charge
Texas Bar No. 13313000
Federal I.D. No. 4267
1221 McKinney, Suite 2100
Houston, Texas  77010
Telephone:  (713) 547-2115
Facsimile:  (713) 547-2600
michael.mazzone@haynesboone.com

**ATTORNEY-IN-CHARGE FOR DEFENDANT HESS CORPORATION AND HESS NORTH DAKOTA PIPELINES, LLC**

OF COUNSEL:

Robert Carlton
Texas Bar No. 24078313
Federal I.D. No. 1626600
Haynes and Boone, LLP
1221 McKinney, Suite 2100
Houston, Texas  77010
robert.carlton@haynesboone.com

**CERTIFICATE OF SERVICE**

   I hereby certify that on July 11, 2016, a true and correct copy of the above document was served on all counsel of record and filed electronically with the Clerk of Court through ECF, and that ECF will send a Notice of Electronic Filing (NEF) to the following:

Tim McCloskey
Blake Rizzo
Carrigan McCloskey & Robertson, LLP
945 Heights Boulevard
Houston, Texas 77008
Telephone: (713) 337-3919
Facsimile: (713) 868-1275

Garrett D. Ludwig
Kelsch, Kelsch Ruff & Kranda
103 Collins Avenue
PO Box 1266
Mandan, North Dakota 58554-7266
(701) 663-9818

ATTORNEYS FOR PLAINTIFF

                */s/ Michael J. Mazzone*